# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBIN SWANIER DEDEAUX | § | PLAINTIFF |
| | § | |
| v. | § | Civil Action No. 1:11cv372HSO-RHW |
| | § | |
| STATE FARM MUTUAL | § | DEFENDANT |
| AUTOMOBILE INSURANCE CO. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DR. BRIAN ANTHONY

BEFORE THE COURT is a Motion [53] to Exclude Testimony of Plaintiff's Expert Dr. Brian Anthony, filed by Defendant State Farm Insurance Company ["Defendant"] on October 15, 2012. Robin Dedeaux ["Plaintiff"] has filed a Response [57] in Opposition to the Motion, and Defendant a Reply [60]. After consideration of the Motion, the submissions and pleadings on file, and the relevant legal authorities, the Court finds that Defendant's Motion should be granted in part and denied in part.

## I. FACTUAL BACKGROUND

This action stems from an April 17, 2010, automobile accident wherein the motorcycle Plaintiff was riding was struck from behind a vehicle operated by Mr. Jeromy Heisterberg. Plaintiff's motorcycle turned on its side, causing her to sustain injury. Plaintiff designated Dr. Brian Anthony, one of her treating physicians, as an expert witness. Dr. Anthony is a board certified general surgeon, a member of the American College of Surgeons, and is licensed to practice medicine in the State

-1-

of Mississippi. Dep. of Dr. Brian Anthony [54-1] at pp. 2-4, att. as Ex. "A" to Def.'s Mot. to Exclude. He practices with The Beach Surgical Group and is affiliated with Hancock Medical Center, both located in Bay St. Louis, Mississippi. *Id*. at pp. 3, 7; *see also* Letter from Dr. Anthony [54-2], att. as Ex. "B" to Def.'s Mot. to Exclude. Prior to Plaintiff's accident, Dr. Anthony[1] performed two surgeries to remove two lipomas located in Plaintiff's hip area.[2] Dr. Anthony also saw Plaintiff on August 24, 2010, after the accident, when she complained of pain in her right thigh. Dep. of Dr. Brian Anthony [54-1] at p. 11, att. as Ex. "A" to Def.'s Mot. to Exclude. After obtaining an updated medical history and performing an examination, Dr. Anthony diagnosed Plaintiff with neuropathy. *Id*. at p. 13.

During Dr. Anthony's deposition counsel for Defendant questioned him about diagnosing neurological conditions. Dr. Anthony testified that: "I will encounter patients with neurological problems. I will make a presumptive diagnosis of a neurological problem. Neuropathy is an area that crosses over many, many specialties and is not isolated to neurosurgery." *Id*. Dr. Anthony ordered an MRI, and noted the presence of two bulging discs that were not apparent before the April 2010 accident. Subsequently, Dr. Anthony performed an ultrasound on the areas, and ascertained that Plaintiff's pain being was not being caused by recurrent

---

[1]Dr. Anthony testified that he knew Plaintiff as she was a co-worker at Hancock Medical Center. Dep. of Dr. Brian Anthony [54-1] at pp. 1, 17, att. as Ex. "A" to Def.'s Mot. to Exclude.

[2]According to Dr. Anthony, Plaintiff fully recovered from the lipoma surgeries.

lipomas. Following the ultrasound, Dr. Anthony, determined that an orthopedic consult was warranted and referred Plaintiff to Dr. Timothy Jackson, an orthopedist. *Id*. at pp. 14-16. Defendant now challenges Dr. Anthony's qualifications to testify in this case.

## II. DISCUSSION

A. Legal Standard

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . ." FED. R. EVID. 104(a). "Before certifying an expert and admitting his testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met." *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (citations omitted). "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 173 (1987)). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

-3-

FED. R. EVID. 702.

The Court functions as a gatekeeper to ensure that an expert is properly qualified and that his testimony is both reliable and relevant. *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir. 1999)(relying on *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590-93 (1993)); *see United States v. McMillan,* 600 F.3d 434, 456 (5th Cir. 2010); *see also Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007) (citing *Daubert,* 509 U.S. at 579). Expert testimony is relevant when it relates to any issue in the case. *Daubert,* 509 U.S. at 591. Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93.

An expert opinion is deemed reliable if it based upon sufficient facts and data, and it is the product of reliable principles and methods. FED. R. EVID. 702(b) and (c). Otherwise, it constitutes "'unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.,* 685 F.3d 452, 459 (5th Cir. 2012) (citing *Daubert,* 509 U.S. at 590). "The court should 'make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Hodges v. Mack Trucks, Inc.,* 474 F.3d 188, 194 (5th Cir. 2006) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999)). *Daubert* "provides an illustrative list of factors that may aid a court in evaluating reliability." *Mathis,* 302 F.3d at 460. These factors include

(1) whether the theory or technique has been tested; (2) whether the

theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted in the scientific community.

*Kumho,* 526 U.S. at 149-50.

"These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). "But the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Id.* The Fifth Circuit has explained that:

> [b]efore a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his "knowledge, skill, experience, training, or education." FED. R. EVID. 702. A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *See Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

*United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *see also St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 412 (5th Cir. 2000).

B.  Analysis

At the outset, the parties do not dispute, and the Court finds, that Dr. Anthony's testimony as one of Plaintiff's treating physicians is relevant to issues central to this case. The crux of the parties' disagreement is the reliability of Dr. Anthony's testimony. Defendant seeks to prohibit Dr. Anthony's testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

509 U.S. 579 (1993). Def.'s Mot. to Exclude Testimony [53], at p. 1. Defendant contends that Dr. Anthony's opinions are inadmissible under Rule 702 because he is not sufficiently qualified by knowledge, skill, experience, or education to provide testimony regarding the following:

> 1) whether the Plaintiff suffered an orthopedic and/or neurologic injury or condition as a result of the motorcycle accident in issue;
> 2) whether the Plaintiff will require any future treatment or surgery for any alleged orthopedic and/or neurologic injury or condition;
> 3) whether the aforementioned accident proximately caused the Plaintiff to suffer any alleged orthopedic and/or neurologic injury or condition; and
> 4) whether the Plaintiff suffered any permanent disability as a result of the accident.

*Id.*

In her Response, Plaintiff "confesses that she is not intending to elicit testimony from Dr. Anthony as to the future need for neurological surgery." Pl.'s Mem. in Supp. of Resp. to Mot. to Exclude [58], at p. 5. She further states that "Dr. Anthony cannot and is not being submitted as an expert to testify regarding a disability rating, any possible neurological procedures that might be necessary in the future or the cost of any possible surgical intervention in the future." *Id.* at p. 6. Plaintiff contends that "she has been properly diagnosed by Dr. Brian Anthony as having neuropathy and is being treated for same." *Id.* at p. 5. Dr. Anthony expounded upon neuropathy in his deposition as follows:

> MR. BELL: And even though you have been asked by opposing counsel early on about your -- whether or not you're an expert as a neurological surgeon or an orthopedic surgeon, Doctor, do you traditionally in your practice treat people and diagnose people who have neurological problems?

>MR. MULLENS: Object to the form.
>
>DR. ANTHONY: I will encounter patients with neurological problems. I will make a presumptive diagnosis of a neurological problem. Neuropathy is an area that crosses over many, many specialties and is not isolated to neurosurgery.

Dep. of Dr. Brian Anthony [54-1] at p. 6, att. as Ex. "A" to Def.'s Mot. to Exclude.

Plaintiff also submits that Dr. Anthony properly opined that she suffered a back injury as a result of the accident. However, Plaintiff further acknowledges that:

> Dr. Anthony is not stating that he is able to perform back surgery. Further, Ms. Dedeaux is not trying to elicit a [sic] testimony from Dr. Brian Anthony that she will require surgical intervention in the future. Dr. Anthony has clearly stated that he is not qualified to testify as to the type of surgery that is necessary or the cost of the same. He did give an opinion that Ms. Dedeaux would require life long medication and that she would need to see a physician to have more MRIs, physical therapy, possible chronic pain management and possible surgery.

Pl.'s Mem. in Supp. of Resp. [58] to Def.'s Mot. to Exclude, at p. 13.

Plaintiff submits that because Dr. Anthony formulated his diagnosis and opinions based upon his treatment and tests performed on her both before and after the accident, he is qualified to testify. In support of her argument, Plaintiff relies on *University of Mississippi Medical Center v. Pounders*, wherein the Mississippi Supreme Court held that "a witness need not be a specialist in any particular profession to testify as an expert. . . . The scope of the witness's knowledge and experience, and not any artificial classification, governs the question of admissibility." *Id.*, 970 So. 2d 141, 146 (Miss. 2007) (internal citations omitted).

In *Bailey Lumber & Supply Co. v. Robinson*, the Court held that a physician

does not have to practice or be a specialist in every area in which he offers an opinion, but he must demonstrate that he is "sufficiently familiar with the standards" in that area by his "knowledge, skill, experience, training, or education" to satisfy Rule 702. *Bailey Lumber*, 98 So. 3d 986, 992-93 (Miss. 2012). "[W]hile this Court has said a specialist in a particular branch within a profession will not be required, we have gone on to say, *only* if the witness possesses scientific, technical, or specialized knowledge on a *particular* topic will he qualify as an expert on *that* topic." *Worthy v. McNair,* 37 So. 3d 609, 616 (Miss.2010) (quoting *Sheffield v. Goodwin,* 740 So. 2d 854, 856 (Miss. 2007)).

In *Troupe v. McAuley,* the Court determined that the trial judge did not abuse his discretion by excluding the testimony of a neurosurgeon who attempted to testify about the standard of care for a neuro-otolaryngologist. *Troupe,* 955 So. 2d 848, 858 (Miss. 2007). The trial court correctly determined that the neurosurgeon was not sufficiently familiar with the standards of neuro-otolaryngology by knowledge, skill, experience, training, or education in that specialty. *Id.*; *see also McDonald v. Mem'l Hosp. at Gulfport,* 8 So. 3d 175, 181 (Miss. 2009) (expert in medical malpractice action does not have to "be of the same specialty" as defendant, but "must show satisfactory familiarity with specialty of defendant doctor in order to testify as to standard of care owed to patient"); *Barrow v. May,* 2012 WL 2899058 (Miss. Ct. App. July 17, 2012) (cardiologist was not sufficiently versed as an oral surgeon or anesthesiologist, therefore, testimony from him regarding oral surgery was not proper).

Dr. Anthony examined and treated Plaintiff, before and following the April 2010 motorcycle accident. Based on his knowledge, skill, experience, training, education, and status as a board certified general surgeon, he drew certain conclusions. The Court cannot find that Dr. Anthony's opinions as they relate to his examination and treatment of Plaintiff are based on conjecture or speculation. In his deposition, Dr. Anthony further agreed that his testimony would be "with regard to his knowledge and experience with general surgery as opposed to giving any opinions that would relate to orthopedic or neurosurgery." Dep. of Dr. Brian Anthony [54-1] at p. 6, att. as Ex. "A" to Def.'s Mot. to Exclude.

Dr. Anthony's medical opinion is that Plaintiff's "condition is a direct result of injuries sustained in the accident on April 17, 2010." Letter [54-2[, att. as Ex. "B" to Def.'s Mem. in Supp. of Mot. to Exclude. He testified at his deposition that his opinion is supported by the changes in Plaintiff's symptoms after the accident and the changes seen in an MRI taken after the accident, which he had compared with an MRI taken before the accident. Dep. of Dr. Brian Anthony [58-1] att. as Ex. "A" to Pl.'s Resp. [58-1] to Def.'s Mot. to Exclude at pp. 9-12.

After reviewing the record, including Dr. Anthony's records, deposition testimony, letter, and related reports, the Court is of the opinion that he is properly qualified to render certain medical opinions as they pertain to his examination and treatment of Plaintiff, based upon his knowledge, skill, experience, training, and education. *See* FED. R. EVID. 702. Dr. Anthony's opinion that the accident at issue affected Plaintiff' symptomology is based upon reliable principles and methods. He

examined Plaintiff and discussed her symptomology both before and after the accident at issue, and he examined MRIs taken both before and after the accident. He determined that Plaintiff's symptomology and condition changed following the accident.

While Dr. Anthony, in his status as one of Plaintiff's treating physicians, is qualified to testify to Plaintiff's conditions both before and following the accident, he will not be permitted to testify or express any opinions regarding orthopedic or neurological diagnoses or treatments. Notwithstanding the foregoing limitations, and based upon the evidence submitted in connection with the present Motion, the Court finds that Dr. Anthony's diagnosis of Plaintiff with neuropathy following the accident falls within the scope of his treatment of Plaintiff, and is not beyond his expertise under the particular circumstances presented in this case. The Court notes that Defendant will be permitted to cross-examine Dr. Anthony concerning his lack of expertise in the fields of orthopedic medicine and neurology, so that the jury can determine the weight that should be given to his testimony. Based on the foregoing, the Court concludes that Defendant's Motion to Exclude Dr. Anthony's testimony should be granted in part and denied in part.

### III. CONCLUSION

After consideration of the parties' submissions, the record, and the relevant legal authorities, and for the reasons stated more fully herein, Defendant's Motion should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [53]

to Exclude Testimony of Plaintiff's Expert Dr. Brian Anthony, filed by Defendant State Farm Insurance Company on October 15, 2012, is **GRANTED IN PART AND DENIED IN PART.** Dr. Brian Anthony is permitted to testify to Plaintiff's conditions both before and following the accident and offer opinions as to his findings regarding her treatment and conditions, including his diagnosis of neuropathy. Dr. Anthony will not be permitted to testify or express any opinions regarding orthopedic diagnoses or treatments, other neurological diagnoses or treatments, or other matters outside of his general surgery specialty. The remainder of Defendant's Motion is **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 30th day of January, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE